UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>J.R. SIMPLOT COMPANY,<br><br>Defendant. | Case No. 1:23-cv-00322-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Plaintiff United States' Motion to Enter Consent Decree. Dkt. 10. Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons set forth below, the Court GRANTS the Motion.

## II. BACKGROUND

### A. Factual History

Since 1944, Defendant J.R. Simplot Company ("Simplot") has owned and operated

a chemical manufacturing facility just outside Pocatello, Idaho known as the Don Plant. At the Don Plant facility, Simplot manufactures phosphoric acid, an ingredient in both the liquid and dry products produced at the facility. The phosphate ore used in the manufacturing process is mined at a Simplot-owned mine roughly 60 miles from the Don Plant and is delivered to the facility via a slurry pipeline. Once the phosphate ore is chemically converted into phosphoric acid, the byproducts are filtered out and disposed of. One byproduct, called phosphogypsum, is deposited into a large outdoor impoundment called a "gypsum stack" for disposal. The gypsum stack is part of a system that also contains waste ponds, sluice tanks, various pipe and drainage systems, and other waste storage system components. Other byproducts from the Don Plant are also deposited in the gypsum stack system.

In 2005 and 2006, the EPA conducted a series of inspections of the Don Plant and identified what it believed were ongoing violations at the facility. These investigations and the EPA's resultant findings form the basis of the United States' Complaint.

The United States filed the instant Complaint against Simplot on July 11, 2023. Dkt. 1. In its Complaint, the United States alleges Simplot has committed ongoing violations of four major federal environmental protection statutes: the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et. seq. ("RCRA"), the Clean Air Act, 42 U.S.C. 4201 et. seq. ("CAA"), the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et. seq. ("CERCLA"), and the Emergency Planning and Community Right-to-Know Act, 42 U.S.C. § 11001 et. seq. ("EPCRA"). *Id.* at 2–3.

The United States more specifically alleges Simplot violated RCRA by failing to

perform hazardous waste characterizations for certain wastes, failing to comply with hazardous waste permit requirements, and failing to properly dispose of hazardous wastes in the Don Plant gypstack. Dkt. 1, at 17–21.

Additionally, United States claims Simplot violated the CAA by exceeding the emissions limitations and conditions set forth in its Idaho Department of Environmental Quality ("DEQ")-issued State Implementation Plan ("SIP") permit. Dkt. 1, at 30–31.

Finally, the United States argues Simplot violated CERCLA and EPCRA by improperly releasing hazardous substances from the Don Plant into the environment and failing to properly report those releases. Dkt. 1, at 32–37.

### B. Procedural History

After filing the Complaint, the United States timely provided public notice of the previously prepared consent decree and invited public comment in accordance with 28 C.F.R.§ 50.7. Dkt. 10-1, at 31. During the public comment period, the United States received responses from nine entities and held two virtual community sessions. *Id.*, at 31–32. The United States responded to each comment in opposition individually, but ultimately did not make any changes to the consent decree. Dkt. 11, at 39–60; Dkt. 11-2.

On March 20, 2024, the United States filed the instant Motion to Approve Consent Judgement, which is unopposed. Dkt. 10. The proposed Consent Decree requires Simplot to take various actions to bring the Don Plant into compliance with the environmental and safety standards set out in the underlying statutes. It also requires Simplot to pay a civil penalty of 1.5 million dollars. Dkt. 11at 21–27. In return, all the civil claims against Simplot in this matter will be resolved. Dkt. 2, at 60–61.

## III. LEGAL STANDARD

The Court has sound discretion to approve a proposed consent decree. *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990); *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984). However, the Court must independently scrutinize the terms of the consent decree and avoid "rubber stamp approval." *United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 747 (9th Cir. 1995). The Court may approve a proposed consent decree if it is procedurally and substantively fair, reasonable, in the public interest, and consistent with the policies of the underlying statute. *Id.* at 743; *United States v. Aerojet*, 606 F.3d 1142, 1152 (9th Cir. 2010).

In determining whether a consent decree is fair, reasonable, and equitable, courts have considered factors such as the consent decree's efficiency in cleansing the environment, the extent to which it compensates the public for losses, the relative strength of the parties' litigating positions, and the availability and likelihood of alternatives to the consent decree. *United States v. Swinerton Builders*, 2024 WL 3407681, at *5 (N.D. Cal. July 12, 2024); *see also United States v. Fort James Operating Co.*, 313 F. Supp. 2d 902, 910 (E.D. Wis. 2004). Additionally, courts have considered whether there has been a "'negotiation process [that] was fair and full of adversarial vigor'" between parties. *Id.* at *2. (quoting *United States v. Google Inc.*, 2012 WL 5833994, at *2 (N.D. Cal. Nov. 16, 2012)).

Where a government agency which protects the public interest has constructed the proposed settlement, the Court should afford more deference to the agreement to "'refrain from second-guessing the Executive Branch.'" *See Turtle Island Restoration Network v.*

*U.S. Dept. of Com.*, 834 F.Supp.2d 1004, 1009 (D. Haw. Jan. 31, 2011) (quoting *Montrose Chem. Corp.*, 50 F.3d at 746). Courts must refrain from asking whether the agreement is one the court considers ideal; rather, the consent decree must only represent a reasonable and factual legal determination. *Swinerton*, 2024 WL 3407681 at *2 (citing *Oregon*, 913 F.2d at 581).

## IV. DISCUSSION

Turning now to the instant Motion, the Court must determine whether the proposed Consent Decree is fair, equitable, and reasonable. For the reasons explained below, the Court finds that it is.

### A. Procedural Fairness

Turning first to procedural fairness, the Court finds that the creation of the consent decree was procedurally fair. The agreement was reached only after extensive debate, research, and compromise between the parties. Dkt. 10-1, at 33; 11-3, at 8–9. This included consultation with legal and technical personnel on both sides. *Id.* The competing interests between the parties, and the adversarial nature of the settlement negotiations, weigh in favor of a finding of procedural fairness. Dkt. 10-1, at 33; *see Oregon*, 913 F.2d at 581.

Additionally, the Department of Justice invited public comment and later extended the deadline for comments after requests were made, giving interested members of the public over two months to contribute to the discussion. Dkt. 10, at 2–3. The DOJ also hosted two virtual community sessions to invite discussion of the proposal from the public. Dkt. 10, at 2–3; Dkt. 10-1, at 31. Of the nine comments from the public, only three were opposed to the consent decree is some way, and the DOJ responded thoroughly to those concerns. Dkt.

11-2, at 2–42. In analyzing the comments, the DOJ's responses are fair and attentive, and at least one of the opposing parties was involved in negotiations prior to the publishing of the consent decree for public comment. Dkt. 11-2, at 11. The United States has met its administrative burden and afforded the parties and the public ample opportunity for public input. Accordingly, the Court finds the Consent Decree is procedurally fair.

### B. Substantive Fairness and Reasonableness

The Court also finds the Consent Decree substantively fair. It prioritizes the cleansing of the environment in various ways. For example, it requires Simplot to make hazardous waste determinations and manage waste streams, ensure proper gypstack management, and mandates various other compliance projects such as the construction of waste recovery systems. Dkt. 10-1, at 21–23; 2-1, at 24–32. It clearly defines what must be done in response to spills of regulated hazardous wastes. Dkt. 2-1, at 29, 355–85. It requires Simplot to submit revised reports for annual toxic chemical discharges between 2004 and 2012. Dkt. 10-1, at 23–24, 27. Perhaps most compelling, the United States has worked with the Idaho DEQ to require Simplot's extended environmental mitigation work, particularly removing invasive species that grew from Simplot's past improper release of wastes and replacing them with native species. Dkt. 10-1, at 25; 2-1, at 41–42. All these remedial measures will be beneficial to environmental cleansing and evidence substantive fairness.

Furthermore, the new Consent Decree serves as a back-up mechanism for ensuring

effective enforcement of previous agreements between Simplot and the United States.[1] Dkt. 10-1, at 23–24. The Court is satisfied that these measures reasonably remediate Simplot's ongoing environmental violations. Thus, the Court feels compelled to give "deference to the agency's expertise and the parties' agreement." *Cannons*, 899 F.2d at 84. Accordingly, the Court finds the terms of the Consent Decree substantively fair and reasonable.

### C. Public Interest

The Consent Decree also serves the public interest. It provides financial assurance to the public for the estimated cost of long-term environmental care after gypstack closure in the future at the Don Plant. Dkt. 10-1, at 23; 2-1 at 32. It also avoids future litigation that is likely to be contested and time-consuming, which could very well result in fewer remedies for the public than the Consent Decree currently provides. Dkt. 10-1, at 34–35; *see Cannons,* 899 F.2d at 90 (discussing how a settlement that accounts for a foreseeable risk of loss is reasonable). Furthermore, and as the Court has discussed above, the Consent Decree contains numerous provisions requiring Simplot to make reparations for environmental harms it has caused, including by ceasing to exceed safe limits for hazardous emissions and replacing invasive species growth it has caused with beneficial native plants. Thus, the terms of the Consent Decree serve the public interest both by ensuring judicial economy and by facilitating public-benefitting remedial measures from Simplot.

---

[1] Simplot has previously entered into other consent decrees with the United States because of violations at the Don Plant. Although those consent decrees are not the subject of the instant litigation, they continue to impose ongoing obligations on Simplot, and it would be beneficial to reinforce those obligations. Dkt. 10-1, at 23–24.

### D. Consistency with Statutory Purposes

Finally, the terms of the Consent Decree are consistent with the purposes of RCRA, CERCLA, EPCRA, and the CAA, which underly this claim. RCRA's purpose is to "promote the protection of health and the environment…by assuring that hazardous waste management practices are conducted in a manner which protects human health and the environment." 42 U.S.C. § 6902(a)(4). The CAA aims to prevent pollution and protect and enhance the quality of national air resources. *See* 42 U.S.C.§ 7409; *Comm. For a Better Arvin v. EPA*, 786 F.3d 1169, 1173-74 (9th Cir. 2015). CERCLA and EPCRA together require strict reporting from facilities that release hazardous substances above a certain quantity. 42 U.S.C. § 9603(a), 40 C.F.R. § 355.33; Dkt. 10-1, at 18–20. All four statutory schemes work in tandem to protect the environment and public health.

Here, the Consent Decree addresses each of these goals. As has already been discussed, it requires Simplot to continue taking remedial measures to mitigate past harms to the environment and prevent future harms. Simplot must produce updated reports for past years that were inaccurately reported. The Consent Decree also looks to the future and ensures that Simplot is prepared to close the gypstack when the time comes in a way that is environmentally responsible. There is no indication that the Consent Decree is out of step with the laws upon which the United States' is based.

Additionally, Simplot faces a civil penalty of 1.5 million dollars plus interest, which is consistent with the deterrent aims of the statutes on which this claim is based. *See United States v. PotlatchDeltic Land & Lumber, LLC*, 2024 WL 2013857, at *2 (D. Idaho May 6, 2024) (citing *United States v. Bunn*, 2021 WL 4865261, at *3 (D. Mont. Aug. 21, 2021)).

MEMORANDUM DECISION AND ORDER - 8

While one public commenter expressed concerns that the 1.5-million-dollar penalty might not comply with relevant standards, the United States justified the amount as "consistent with EPA's relevant penalty policies, fair in relation the civil penalties assessed in previous settlements that have been approved by courts," and which considered "the environmental impact of the alleged violations as well as Simplot's size."[2] Dkt. 11-2, at 28; *see United States v. Coeur d'Alenes Co.*, 2012 WL 12895660, at *3–4 (D. Idaho Nov. 28, 2012) (finding an "ability to pay" approach can be substantively fair even without analysis of comparative fault). The Court finds that such a civil penalty, together with the other components of the Consent Decree, compensate "in a sensible way from a plausible interpretation of the record," such that the Court should defer to the agency's expertise. *See Cannons*, 899 F.2d at 90.

## V. CONCLUSION

After careful consideration, the Court finds the Consent Decree between the United States and Simplot is procedurally and substantively fair, reasonable, in the public interest, and consistent with the policies of the underlying statute. There is every indication that it is the result of a rigorous adversarial process between the parties which was influenced by the agency's expertise. As such, the Court approves this Consent Decree.

---

[2] In *United States v. Montrose*, 50 F.3d at 57, the court held that there should be a proportional relationship between the amount a settling defendant is paying, and an estimate of the total potential damages caused by the defendant. The court also explained that the fairness of the proportional relationship should be evaluated considering the degree of liability attributable to the settling defendants. The Court is persuaded that such a relationship exists here. As United States explains, such a civil penalty is on par with other settlements in similar cases, and it does not account for the upcoming $150 million dollars Simplot will spend on compliance measures, and the $100 million that Simplot has already spent on such measures. Dkt. 11-2, at 31–32.

## VI. ORDER

The Court HEREBY ORDERS:

1. The United States' Motion to Approve Consent Judgement (Dkt. 10) is GRANTED.

DATED: October 22, 2024

_____
David C. Nye
Chief U.S. District Court Judge